UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JULIE A. SU,<br><br>　　　　　　Petitioner,<br><br>　　v.<br><br>AMAZON.COM SERVICES LLC,<br><br>　　　　　　Respondent. | CASE NO. C24-270 MJP<br><br>ORDER GRANTING PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA |

This matter comes before the Court on the Petition to Enforce an Administrative Subpoena filed by Petitioner Julie A. Su, Acting Secretary of Labor, U.S. Department of Labor (DOL). (Dkt. No. 1.) Having reviewed the Petition, Respondent Amazon.com Services LLC's Opposition (Dkt. No. 16), the Reply (Dkt. No. 18), and all supporting materials, the Court GRANTS the Petition.

**BACKGROUND**

Acting Secretary Su commenced this action to enforce an administrative subpoena duces tecum served by the Office of Labor-Management Standards (OLMS) within the DOL on

Amazon.com Services LLC. The subpoena seeks information about the identities and amounts paid as travel expenses in 2021 and 2022 to various officers, managers, and supervisors who traveled to Staten Island, NY to persuade Amazon employees against unionizing. Amazon has refused to comply with the subpoena, but it offers to provide limited information as a compromise. The Court reviews the facts regarding the unionization campaign and the subpoena at issue.

A.  **Unionization at Amazon's Facility in Staten Island**

In April 2021, a group of Amazon warehouse employees in Staten Island, New York founded the Amazon Labor Union (ALU) and began a unionization campaign. In response, Amazon commenced a "campaign of its own to dissuade employees from signing union authorization cards and electing union representation." (Declaration of Chad Markham ¶ 8 (quotation omitted) (Dkt. No. 1-3 at 3).) "Amazon required warehouse employees to attend meetings in which Amazon's agents made statements in opposition to union representation and the Union." (Id.) Amazon's managers and supervisors escorted employees to these meetings, where attendance was digitally recorded. (Id.) As alleged, many of these managers and supervisors were brought in from outside of Staten Island to perform these functions. "According to information OLMS has gathered through its investigation, Amazon managers or employees from other parts of the country made statements opposing unionization at the mandatory meetings and spoke one-on-one with employees about voting against unionization on the warehouse floor." (Id.)

Amazon's anti-union lobbying efforts were not without their controversy. In January 2023, a National Labor Relations Board Administrative Law Judge found that Amazon had

committed "certain unfair labor practices in response to the union organizing drive in Staten Island," including the supervisor-led mandatory meetings. (Markham Decl. ¶ 9 & Ex. 1.)

**B.     OLMS's Investigation and Subpoena**

In May 2022, OLMS opened an investigation into whether Amazon complied with Section 203(a) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA). Section 203 of the LMRDA requires employers to file an annual financial disclosure report of any expenditure "where an object thereof, directly or indirectly, is to interfere with, restrain, or coerce employees in the exercise of the right to organize and bargain collectively . . . or is to obtain information concerning the activities of employees or a labor organization in connection with a labor dispute . . . ." 29 U.S.C. § 433(a)(3). The public disclosures are required to be made on a Form LM-10 with OLMS, which the agency then publishes on its website. Under section 601(a) of the LMRDA, the Secretary may conduct an investigation to determine whether any person has violated or is about the violate the LMRDA, including the disclosure requirements. See 29 U.S.C. § 521(a).

OLMS believes that Amazon may have failed to disclose certain expenses it incurred in responding to the unionization efforts in Staten Island on its FY 2021 and 2022 Form LM-10 filings. OLMS issued a subpoena duces tecum to Amazon on August 1, 2023, after informal requests for documents relevant to the investigation failed to bear fruit. (Markham Decl. ¶¶ 12-14.) The subpoena seeks:

> (1) Documents sufficient to identify the following Amazon.com Services LLC. ("Amazon") employees' job titles and duty stations during Amazon's fiscal year (FY 2021 and 2022: Chaka Donaldson; Eric Warrior; Michael Williams; Mike Rebell; Ron Edison; Rebecca Smith; Charlotte Bowers; Mike Tanelli; Stephanie Sciurba; Christine Hernandez; Elliott Jones; and Tyler Grabowski.
>
> (2) Documents sufficient to identify the names, job titles, and duty stations during Amazon's FY 2021 and 2022 of all other Amazon officers, managers, supervisors, or employees who traveled to Staten Island, New York on behalf of Amazon and had their

travel expenses (mileage, per diem, airfare, train fare, hotel, car, etc.) reimbursed or paid for by Amazon and attended or conducted meetings with employees at the JFK8 facility or the LDJS facility regarding the Amazon Labor Union (the "Union"), the union election process, and/or Amazon's opposition to the Union; (b) assisted in bringing employees to those meetings and/or tracking attendance at those meetings; or (c) otherwise participated in Amazon's response to the union organizing drives at JFK8 and LDJS.

(3) Job descriptions in effect during Amazon's FY 2021 and 2022 for the positions held by the individuals referenced in Requests 1 and 2 at the time they traveled to Staten Island, New York.

(4) Documents sufficient to describe Amazon's reimbursement and/or purchasing policies and methods for travel related expenses (e.g., airline tickets, hotel accommodations, car rentals, per diem and any other approved expense) for officers, managers, supervisors, and employees on official business and/or in official travel status that were in effect during Amazon's FY 2021 and 2022.

(5) Records pertaining to any travel expenses that Amazon paid for trips made by the individuals referenced in Requests 1 and 2 to Staten Island, New York during Amazon's FY 2021 and 2022, including but not limited to disbursement records or other documents showing payment dates, amounts, payees, expense types, and methods of payment or reimbursement; expense reports; airline, hotel, and car rental receipts; and records relating to per diem and reimbursed expenses; and

(6) Records relating to meetings with employees at JFK8 or LDJS that were conducted and/or attended by any of the individuals referenced in Request Nos. 1 and 2 above during Amazon's FY 2021 and 2022, including, but not limited to, agendas, meeting minutes, attendance rosters, and evaluations.

(Markham Decl. ¶ 15 & Ex. 2.)

Amazon has refused to provide documents responsive to the subpoena. Nevertheless, Amazon concedes that it has "reimbursed supervisors for travel expenses" and that those expenses were "incurred when the supervisor heads out on the road to persuade employees on the subject of unionization." (Amazon Resp. at 2 (Dkt. No. 16).) And as a form of compromise, Amazon has offered to provide the following information:

(1) "the job titles and job descriptions for the individuals identified in Request No. 1" of the subpoena;

(2) "the job titles and job descriptions of the officers, managers and supervisors whose primary work site was not JFK8 or LDJ5 and who traveled from their primary work site to Amazon's JFK8 and LDJ5 locations to communicate to employees regarding, among

other things: the Amazon Labor Union, the union election process, Amazon's opposition to the union, and other aspects of Amazon's response to the union organizing drives at JFK8 & LDJ5."

(3) a stipulation that Amazon "paid for the travel related expenses (e.g., airline tickets, hotel accommodations, car rentals, per diem or other approved expenses) for the activities of the officers, managers and supervisors described in Nos. 1-2 during FY 2021 and 2022."

(Amazon Resp. at 8-9.)

**ANALYSIS**

**A.     Enforcement of the Agency Subpoena**

"The scope of the judicial inquiry in an . . . agency subpoena enforcement proceeding is quite narrow." E.E.O.C. v. Fed. Exp. Corp., 558 F.3d 842, 848 (9th Cir. 2009) (citation and quotation omitted). "The critical questions are: (1) whether Congress has granted the authority to investigate; (2) whether procedural requirements have been followed; and (3) whether the evidence is relevant and material to the investigation." Id. (citation and quotation omitted). If the agency satisfies these factors, "the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome." E.E.O.C. v. Children's Hosp. Med. Ctr. of N. California, 719 F.2d 1426, 1428 (9th Cir. 1983 (en banc), overruled on other grounds as recognized in Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1303 (9th Cir. 1994); see also United States v. Morton Salt Co., 338 U.S. 633, 652-653 (1950) ("The gist of the protection is in the requirement . . . that the disclosure sought shall not be unreasonable" (quotation omitted)).

Below, the Court reviews these three "critical questions" and the subpoena's reasonableness, and finds the subpoena was properly issued.

ORDER GRANTING PETITION TO ENFORCE ADMINISTRATIVE SUBPOENA - 5

### 1. Authority

The Secretary has the power to "determine whether any person has violated or is about to violate any provision" of the LMRDA. 29 U.S.C § 521(a). This power includes issuing subpoenas, administering oaths and affirmations, questioning witnesses, and inspecting records and evidence. 29 U.S.C. § 521(b).

Here, OLMS had the authority to serve the subpoena in order to investigate whether Amazon violated the reporting requirements of § 203(a) of the LMRDA. (See Markham Decl. ¶ 11.) The investigation and subpoena fall within the purposes of the LMRDA, and the Secretary's investigative authority under the Act. The Court finds that Su and OLMS had the authority to issue the subpoena to Amazon. The Court also notes that Amazon does not contest this issue.

### 2. Compliance with Procedural Requirements

There is no dispute that OLMS properly followed the procedural requirements to issue the subpoena to Amazon. The Secretary of Labor has authority to delegate her investigatory and subpoena powers to subordinate officers of her department, and to delegate her investigatory powers to other departmental agencies. See 29 U.S.C. §§ 521, 527. Here, Chad Markham, an OLMS Supervisory Investigator, acted under the delegation of authority from the OLMS District Director, the Director of OLMS, and the Acting Secretary of the DOL. (Markham Decl. at ¶ 14); see 29 U.S.C. § 521(b); Delegation of Authority and Assignment of Responsibility to the Director, Office of Labor-Management Standards, 77 FR 69376-01 (Nov. 16, 2012). And Markham avers that he properly served the subpoena on Amazon. (Markham Decl. ¶ 14.) The Court finds OLMS properly followed procedure in issuing the subpoena.

### 3. Relevance of Materials Sought

The Court finds that the materials sought are relevant, notwithstanding Amazon's strenuous objections.

"[C]ourts must enforce administrative subpoenas unless the evidence sought by the subpoena is plainly incompetent or irrelevant to any lawful purpose of the agency." Fed. Ex., 558 F. 3d at 854 (internal citation and quotation omitted). "Relevancy is determined in terms of the investigation rather in terms of evidentiary relevance." Id. And the relevancy requirement is "not especially constraining." E.E.O.C. v. Shell Oil Co., 466 U.S. 54, 68 (1984). Rather, "courts have generously construed the term 'relevant' and have afforded [agencies] access to virtually any material that might cast light on the allegations against the employer." Id. at 68-69 (citation and quotation omitted). An agency "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." Morton Salt, 338 U.S. at 642-43. An agency does not need probable cause to justify issuance of a subpoena. See United States v. Powell, 379 U.S. 48, 57 (1964) (citing the "general rejection of probable cause requirements in [administrative subpoenas] involving other agencies"). And a party may not avoid an administrative subpoena on the ground that it has a valid defense to a potential enforcement action, unless the defense raised is "jurisdictional in nature – i.e., when the agency lacks jurisdiction over the subject of the investigation." E.E.O.C. v. Karuk Tribe Hous. Auth., 260 F.3d 1071, 1077 (9th Cir. 2001).

The Court agrees with Su that OLMS's subpoena seeks information relevant to its investigation of whether Amazon violated the reporting requirements of § 203(a) of the LMRDA. The subpoena asks for Amazon to identify those individuals who travelled to Staten Island to campaign against the unionization efforts, and the amounts paid to such individuals as

travel reimbursement. OLMS also seeks the names and job positions to confirm whether these individuals were acting outside of their normal job duties and areas of normal employment. This information is particularly relevant to determine whether the employees were acting within their normal scope of employment or were being used solely as anti-union persuaders. If these individuals acted outside of their normal capacity, then the reimbursement likely needs to be disclosed on the LM-10 form. And, as Su explains in the reply brief, the names of the individuals are relevant to identifying witnesses who can then be questioned by OLMS concerning job duties and the facts particular to the work performed at the Staten Island facility related to the unionization efforts. This is consistent with the Secretary's authority to "question such persons as [s]he may deem necessary" during the investigation. 29 U.S.C. § 521(a). Similarly, the amounts paid to these individuals is relevant to the question of whether Amazon failed to properly report the sums paid on the LMRDA form. This information is relevant and properly requested.

      Amazon unconvincingly argues that the materials sought are not relevant because any reimbursement paid for travel is by definition "compensation" that need not be reported under the LMRDA. (See Opp. at 14 (citing 29 U.S.C. § 433(e)).) This argument turns on Amazon's selective and overbroad reading of the law as to what must be disclosed on the LM-10 form. In Amazon's view, any payment to any employee for travel to Staten Island to campaign against the unionization is exempt from reporting because it was compensation for work, not expense reimbursement. But the Act provides a far narrower exemption that covers only "expenditures made to any regular officer, supervisor, or employee of an employer <u>as compensation for service as a regular officer, supervisor, or employee</u> of such employer." 29 U.S.C. § 433(e) (emphasis added). As Su correctly points out, not all expenditures to a "regular officer, supervisor, or employee" qualify as "compensation" that are exempt from the reporting requirements. (Reply at

|   |   |
|---|---|
| 1 | 6.) Whether payments are expense reimbursement or compensation turns on whether the work |
| 2 | performed was as part of the employee's "regular" duties or not. Here, Amazon concedes it |
| 3 | reimbursed supervisors who traveled to Staten Island to campaign against unionization. OLMS |
| 4 | has the authority to investigate and determine whether the work performed by these individuals |
| 5 | was part of their "regular" or not. Amazon fails to convince the Court that it should accept its |
| 6 | self-serving gloss on the facts that remain to be investigated by DOL and OLMS, and which |
| 7 | may, at most, be a defense to an enforcement action. As the Ninth Circuit has explained, a party |
| 8 | may not avoid an administrative subpoena on the ground that it has a valid defense to a potential |
| 9 | subsequent lawsuit. See Karuk, 260 F.3d at 1077. Amazon is welcome to pursue its arguments |
| 10 | on the merits of any reporting duty in an enforcement action once the facts have been fully |
| 11 | developed, but that does not form a valid basis to quash the investigative subpoena. And while |
| 12 | the rule in Karuk does not apply to jurisdictional challenges, Amazon makes no such argument |
| 13 | here. See id. |
| 14 |       The Court also finds Amazon's compromise offer to be an inadequate ground on which to |
| 15 | narrow or limit the subpoena. Amazon offers to identify jobs and title descriptions of the persons |
| 16 | sent to Staten Island to campaign against unionization and to stipulate that it paid travel related |
| 17 | expenses to the officers, managers and supervisors who went. This offer unreasonably limits |
| 18 | OLMS's ability to identify witnesses and ask further questions of them relevant to the ultimate |
| 19 | question of whether Amazon violated the disclosure requirements of the LMRDA. Simply |
| 20 | having job titles and descriptions will not allow OLMS to complete a full investigation into |
| 21 | whether the reimbursement for travel expenses constitutes compensation or not. And the sums |
| 22 | paid are necessary to be disclosed to determine what amounts need to be reported, should they |
| 23 | fall within the disclosure requirements. Merely knowing that reimbursements were paid will not |
| 24 |   |

enable OLMS to understand the nature and scope of any reporting violations and it would unduly impede its investigative efforts.

4.      **Reasonableness of Subpoena**

In addition to the three-part test outlined by the Ninth Circuit, the Supreme Court has held that a Fourth Amendment reasonableness inquiry that must be satisfied. See Morton Salt, 338 U.S. at 652-63 ("[I]t is sufficient [for Fourth Amendment purposes] if the inquiry is within the authority of the agency, the demand is not too indefinite, and the information sough is reasonably relevant.") If the agency issuing the subpoena meets the three-part test, the subpoena should be enforced unless the party being investigated proves the inquiry is unreasonable because it is overbroad or unduly burdensome. Id.; Gen. Ins. Co. of Am. v. E.E.O.C., 491 F.2d 133, 136 (9th Cir. 1974). Amazon does not argue that the subpoena is overbroad or unduly burdensome. And the Court finds that the information sought is reasonable.

**B.      No Evidence of Improper Purpose**

Amazon argues that Su is acting for an improper purpose both by deviating from prior agency positions without notice and by issuing a subpoena rather than just commencing an official enforcement action. Neither argument has merit.

First, Amazon argues OLMS is acting arbitrarily and capriciously in violation of the Administrative Procedures Act by requiring companies to report compensation paid to officers, managers, or supervisors. This argument builds on Amazon's untenable belief that any payment to its employees can only be considered non-reportable compensation. This argument fails to convince the Court, as explained above in Section (A)(3). Additionally, Amazon trots out several arguments that DOL is ushering in a new enforcement rule without notice and comment, and in violation of the principle of "desuetude." All of these arguments fall apart because there is no

evidence that DOL has shifted its policy or rules on what must be disclosed under § 203(e) of the LMRDA. Nowhere has Amazon identified a new policy or rule that requires any compensation to be disclosed. Instead, OLMS seeks to determine whether the payments Amazon made qualify as "expenditures" against unionization that must be reported under the Act. This is consistent with its policies, as well as the OLMS Interpretive Manual on which Amazon relies. That manual confirms that the determination of what must be disclosed requires a factual investigation into whether the employee was "performing as a regular employee" or in an unusual role to persuade others against unionizing. (See OLMS Interpretive Manual § 254.100 (2022); Opp. at 5.) The Court rejects Amazon's arguments. See Su v. Starbucks Corp., MC23-45 MJP, Dkt. No. 21 (W.D. Wash. Oct. 4, 2023) (rejecting substantially similar arguments).

Amazon's arguments also unnecessarily reach the issue of whether an enforcement action against it would have merit. This puts the cart before the horse. Any claims about overbreadth or policy reversals can and should be made if OLMS actually files an enforcement action. Here, the Court only examines whether OLMS has the power to investigate the issues, not whether a potential enforcement action is improper or whether it violates existing regulations or practices. Lastly, the Court notes that Amazon misplaces reliance on cases concerning agencies that changed interpretation or issued new guidance for which notice and comment was required. Those cases are irrelevant here, where there is no change in the regulations or policies.

Second, Amazon argues that given its factual concessions and compromise offer, OLMS is abusing the subpoena process to "obtain the very information it can properly obtain only through voluntary compliance or, in the event of an employer's refusal, upon a successful petition for injunctive relief under 29 U.S.C. § 440." (Opp. at 18.) As the Court has explained above, Amazon's offer of compromise is inadequate. This argument also ignores the

investigatory powers of the agency given to it by Congress, which expressly allows it to investigate possible violations of the LMRDA. 29 U.S.C. § 521(a). As Su explains, there are further facts the Agency wishes to obtain to investigate before it reaches any conclusions on whether it wishes to pursue enforcement. The Court finds no valid reason why OLMS must start an agency enforcement action rather than use its statutory-mandated investigative authority.

**C.     No Basis for Protective Order**

Amazon argues that the Court should protect the First Amendment and privacy interests of Amazon and its employees and "limit[] the subpoena to include only information necessary for OLMS to determine whether a 'violation' may have occurred[.]" (Opp. at 20.) Amazon fails to articulate what the First Amendment and privacy interests are and it does not engage in any serious discussion of how compliance with the subpoena would infringe on those generalized interests. Instead, Amazon suggests that there is "good cause" to issue a protective order to bar OLMS from disclosing the records it produces in response to the subpoena, and that any public disclosure must be limited to the same information as would be disclosed on the LM-10 form. (Opp. at 21.) The Court disagrees.

In order to issue a protective order under Rule 26(c), Amazon needs to show good cause, which requires a showing that it would suffer prejudice or harm if particular information is released to the public. Foltz v. State Farm, 331 F.3d 1122, 1130 (9th Cir. 2003). This also requires evidentiary support. Id. Amazon has failed to meet its burden of persuasion and production. There is no evidence that Amazon or the supervisors who did its anti-union bidding will suffer any specific prejudice or harm if OLMS obtains the information it seeks. Relying on conjecture, Amazon suggests the ALU may obtain the names of the employees and then harass these individuals because social media accounts associated with ALU have insulted Amazon

supervisors in the past. (Opp. at 22.) This argument is speculative at best. The mere fact that negative comments and insults have been made against Amazon in relation to the ALU does not convince the Court that a protective order is needed. There is no evidence of any particularized risk of harassment or something more than insulting social media posts. Moreover, Amazon has not suggested that the identities of the supervisors involved are unknown to the ALU or that they could not be obtained from others, including those employees who were forced to attend the anti-union meetings. Indeed, the subpoena itself identifies several individuals. The Court DENIES this request.

## CONCLUSION

The Court finds that Amazon must comply with the subpoena issued to it by OLMS. The Court finds the subpoena to be reasonable and properly issued for no improper purpose. Additionally, the Court finds that Amazon's offer of compromise is inadequate and that there is no basis for entry of a protective order. The Court therefore GRANTS the petition and ORDERS Amazon to comply with the subpoena within 30 days of entry of this Order.

The clerk is ordered to provide copies of this order to all counsel.

Dated April 24, 2024.

Marsha J. Pechman
United States Senior District Judge